IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDY TUOMELA,<br><br>            Plaintiff,<br><br>    vs.<br><br>WALDORF-ASTORIA GRAND WAILEA HOTEL,<br><br>            Defendant. | Civ. No. 20-00117 JMS-RT<br><br>ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT THREE (DEFAMATION), ECF NO. 38 |

## ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT THREE (DEFAMATION), ECF NO. 38

### I. INTRODUCTION

Defendant Waldorf=Astoria Management LLC[1] moves pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to one aspect of Count Three (alleging defamation) of pro se Plaintiff Wendy Tuomela's ("Plaintiff" or "Tuomela") Complaint. ECF No. 38. The court has reviewed the Motion, the Opposition, and the Reply, ECF Nos. 38, 44, and 46; and decides the

---

[1] The pro se Complaint and caption name Defendant as "Waldorf-Astoria Grand Wailea Hotel." ECF No. 1-1 at PageID # 10. Defendant's Answer asserts that its proper name is "Waldorf=Astoria Management LLC." ECF No. 9 at PageID # 70. The court refers to Defendant simply as "Waldorf" or "Defendant."

matter under Local Rule 7.1(c) without a hearing.  Based on the following, the Motion is DENIED.  Count Three remains as originally pleaded.

## II.  BACKGROUND

Tuomela's Complaint alleges that she was wrongfully terminated in April 2018 from her 20-year tenure of employment at the Grand Wailea Hotel.  ECF No. 1-1 at PageID ## 11, 15-18.  She claims she was falsely accused of theft, and was forced to pay the Hotel $900 in cash, which apparently was part of the amount she was accused of stealing.  The Complaint alleges that after being accused, she was threatened with incarceration by a security guard (Michael Palazzotto) and Defendant's human resources representative (Carol Kawabata) if she did not pay (or return) the money.  *Id.* at PageID ## 11-13, 15-17.  It alleges that on April 17, 2018, Kawabata entered into a contract with Plaintiff to keep the circumstances of her termination confidential.  *Id.* at PageID # 18.  Instead, the Complaint alleges that Kawabata told a hotel restaurant manager, Justin Sugarman, that Plaintiff was fired for theft and misconduct, and Sugarman told other staff members.  *Id.* at PageID ## 14, 18.  Since that time, Plaintiff was denied comparable employment for similar positions from other employers and was "essentially blackballed from any employment in Wailea[.]"  *Id.* at PageID # 14.  She alleges that a "false police report surfaced when she was applying for a job

which required a background check [and] [d]ue to the defamatory nature of the police report she did not get the position she was seeking." *Id.*

Plaintiff filed her Complaint on February 27, 2020 in the Second Circuit Court of the State of Hawaii, ECF No. 1-1, and on March 13, 2020, Defendant removed it to this court based on diversity of citizenship. ECF No. 1. The Complaint alleges counts entitled Extortion, Breach of Fiduciary Duty, Defamation of Character, Wrongful Termination, and Breach of Contract. ECF No. 1-1 at PageID ## 12-18. By Order of June 26, 2020, the court granted a motion for judgment on the pleadings and dismissed Count One alleging extortion. ECF No. 28. Thereafter, Defendant filed two additional motions for judgment on the pleadings—one addressed to Count Two alleging breach of fiduciary duty and one addressed to Count Three alleging defamation. ECF Nos. 36, 38. The instant Order addresses the second motion as to Count Three; a separate order addresses the first motion as to Count Two.

### III. DISCUSSION

Count Three alleges "defamation of character" based on two general theories.[2] First, Tuomela contends that she was defamed when Kawabata told

---

[2] Under Hawaii law, a plaintiff must establish four elements to sustain a claim for defamation:

(continued . . .)

3

Sugarman "confidential information" that Tuomela was terminated for theft and misconduct, and then Sugarman told others. She alleges that her reputation was damaged as a result. ECF No. 1-1 at PageID # 14. Second, Count Three alleges:

> On August 3rd, 2018, in a continuing search for comparable employment, Ms. Tuomela was confronted with a police report (public record) (Exhibit I) that states . . . she is accused of theft. The false police report surfaced when she was applying for a job which required a background check. Due to the defamatory nature of the police report she did not get the position she was seeking. . . . . She has not been able to gain employment equal to the position that she lost as a server at the Humu Room in the Grand Wailea Hotel.

*Id.* Waldorf's Motion is directed only at the defamation allegations regarding the police report.[3] That is, Waldorf does not seek, at least with this Motion, a ruling regarding the allegations about statements Kawabata made to Sugarman that were

---

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Gold v. Harrison*, 88 Haw. 94, 100, 962 P.2d 353, 359 (1998) (brackets in original) (quoting *Dunlea v. Dappen*, 83 Haw. 28, 36, 924 P.2d 196, 204 (1996)).

[3] It is unclear whether a report to police about Tuomela was made in writing or orally, but it makes no difference for present purposes whether libel (written statement) or slander (oral statement) is at issue. *See McNally v. Univ. of Haw.*, 780 F. Supp. 2d 1037, 1058 (D. Haw. 2011) ("Hawaii views claims for slander and libel under the defamation rubric.") (citation omitted).

4

relayed to others. Rather, this Motion only argues that statements made to police complaining of a crime are not actionable as defamation, contending that such statements are absolutely privileged. ECF No. 38-1 at PageID ## 329-34.

**A.     An Absolute Privilege is the Minority Rule**

Waldorf cites several cases holding that an absolute privilege protects statements made to police, and thus encourages persons to report criminal activity to authorities without fear of retaliation. *Id.* at PageID # 332. The interest is "encouraging the free and unhindered communications to law enforcement authorities necessary to facilitate the investigation and prosecution of crimes." *Ledvina v. Cerasini*, 146 P.3d 70, 75 (Ariz. Ct. App. 2006); *see also, e.g.*, *Eddington v. Torrez*, 874 N.W.2d 394, 397 (Mich. Ct. App. 2015) ("[P]ersons who make statements to the police when reporting crimes or assisting the police in investigating crimes enjoy a privilege in those statements against the police divulging them for any purpose other than law enforcement. Accordingly, those statements may not be used to sustain a defamation claim."). In *Hagberg v. California Federal Bank FSB*, 81 P.3d 244 (Cal. 2004), for example, the California Supreme Court held that, under California Civil Code § 47(b),[4] statements made to

---

[4] Section 47(b) provides in part: "A privileged publication or broadcast is one made: . . . (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law
(continued . . .)

5

law enforcement personnel reporting suspected criminal activity are "absolutely" privileged "and can be the basis for tort liability only if the plaintiff can establish the elements of the tort of malicious prosecution." *Id.* at 245. "[T]he absolute privilege established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings. It is intended to 'assure utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing.'" *Id.* at 249 (quoting *Silberg v. Anderson*, 786 P.3d 365, 369 (Cal. 1990) (emphasis omitted)).[5]

But Waldorf relies on a minority rule. Rather, as the Idaho Supreme Court recently reiterated, "the majority rule is that statements made to law enforcement enjoy [only] a qualified privilege from defamation actions, which can

---

and reviewable pursuant to [statutes governing writs of mandate]," with certain statutory exceptions.

[5] *Hagberg*, however, was largely superseded this year by the California Legislature. Effective January 1, 2021, the California Legislature amended § 47(b) by adding an exception to the absolute privilege that provides:

> (5) This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report.

*See* 2020 Cal. Legis. Serv. Ch. 327 (A.B. 1775). Given this amendment, under current California law there is only a qualified privilege for reports of a crime—reports that are intentionally false or made with reckless disregard of their truth are not privileged.

be lost through abuse, such as when statements are made with malice or in bad faith." *Siercke v. Siercke*, 476 P.3d 376, 381 (Idaho 2020) (citing *Berian v. Berberian*, ___ P.3d ___, 2020 WL 6387153, at *8 (Idaho Nov. 2, 2020)). "[A] qualified privilege [strikes] the appropriate balance between protecting those who seek to report criminal conduct to law enforcement and the countervailing interest in remedying the 'potentially disastrous consequences that may befall the victim of a false accusation of criminal wrongdoing.'" *Id.* (quoting *Gallo v. Barile*, 935 A.2d 103, 111 (Conn. 2007)).

In analyzing case law from various jurisdictions, the Connecticut Supreme Court followed "a majority of states that have addressed this issue[,]" *Gallo*, 935 A.2d at 111, and agreed with the Florida Supreme Court that "a qualified privilege is sufficiently protective of [those] wishing to report events concerning crime. . . . There is no benefit to society or the administration of justice in protecting those who make intentionally false and malicious defamatory statements to the police." *Id.* (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992)). In turn, *Fridovich* broadly surveyed state case law and other authorities, 598 So. 2d at 67-68 & n.4, and followed "a majority of the other states [that] have held in this context, that defamatory statements voluntarily made by private individuals to the police . . . prior to the institution of criminal charges are

presumptively qualifiedly privileged." *Id.* at 69. Many of these opinions distinguish between statements made as part of existing judicial or quasi-judicial proceedings (such as trial testimony)—for which an absolute privilege from defamation exists—and statements to police before the initiation of proceedings—which are subject to a qualified privilege. *See, e.g.*, *DeLong v. Yu Enters., Inc.* 47 P.3d 8, 10-12 (Or. 2002); *Pope v. Motel 6*, 114 P.3d 277, 282-83 (Nev. 2005).

**B.     The Court Applies the Majority Rule—A Qualified Privilege**

Under the *Erie* doctrine, the court applies substantive Hawaii law in the present case, which is based on diversity of citizenship. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Hawaii has not adopted either the majority or minority rule as to the degree of privilege from defamation given to statements made to police *before* criminal proceedings are initiated.[6] Thus, absent certifying a

---

[6] In *existing* litigation, "Hawaii courts have applied an absolute litigation privilege in defamation actions for words and writings *that are material and pertinent to judicial proceedings*." *Matsuura v. E.I. du Pont de Nemours and Co.*, 102 Haw. 149, 154, 73 P.3d 687, 692 (2003) (citations omitted) (emphasis added). In that regard, *Matsuura* reiterated the holding from *Ferry v. Carlsmith*, 23 Haw. 589 (1917) that it is "well settled that attorneys, in the conduct of judicial proceedings, are privileged from prosecution for libel or slander in respect to words or writings, used in the course of such proceedings, reflecting injuriously upon others, when such words and writings are material and pertinent to the question involved." *Id.* at 591. *Ferry*, however, gave limits to that "absolute" privilege:

> The communication is absolutely privileged if the same is a fair comment upon the evidence and relevant to the matters at issue. Counsel is not liable to answer for defamatory matter uttered by him in the trial of a cause if the matter is applicable and pertinent

(continued . . .)

8

question to the Hawaii Supreme Court, this "court, sitting in diversity, must use its best judgment to predict how the Hawaii Supreme Court would decide the issue." *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 944 (9th Cir. 2004) (citation and editorial marks omitted). "In so doing, a federal court may be aided by looking to well-reasoned decisions from other jurisdictions." *Id.* (quoting *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980)). And—using its best judgment and analyzing those well-reasoned decisions—this court applies the majority rule here. That is, a qualified (not absolute) privilege applies under Hawaii law.

The court begins with the proposition that, under Hawaii law, statements that "impute to a person the commission of a crime" are defamatory per se. *Isaac v. Daniels*, 2018 WL 1903606, at *6 (D. Haw. Mar. 20, 2018) (quoting *Partington v. Bugliosi*, 825 F. Supp. 906, 915 (D. Haw. 1993)).[7] As such, Hawaii

---

> to the subject of inquiry, but this privilege of counsel must be understood to have this limitation, that he shall not avail himself of his situation to gratify private malice by uttering slanderous expressions against party, witness, or third persons which have no relation to the subject-matter of the inquiry.

*Id.* (quotation marks and citation omitted).

[7] Of course, the statement must also be *false* to be actionable as defamation. *See Gold*, 88 Haw. at 100, 962 P.2d at 359 (requiring "a false *and* defamatory statement concerning another" as an element of defamation) (emphasis added). As the Hawaii Supreme Court has explained:

(continued . . .)

9

courts would likely conclude that "the law should provide a remedy" against "those who make intentionally false and malicious defamatory statements to the police." *Fridovich*, 598 So. 2d at 69. Although the law should encourage reporting of criminal activity, "public policy is [not] violated by requiring that citizens who report criminal activities to the police do so in good faith." *Gallo*, 935 A.2d at 114 (quoting *Caldor, Inc. v. Bowden*, 625 A.2d 959, 968 (Md. Ct. App. 1993)). "Those who maliciously volunteer false accusations of criminal activity to the police should not be granted absolute immunity. Although [courts] do not wish to discourage the reporting of criminal activity, [they] also do not wish to encourage harassment, or wasting of law enforcement resources, by investigations of false, maliciously made complaints[.]" *Id.* (quoting *Bowden*, 625 A.2d at 968).

    Further, the Hawaii Supreme Court has not hesitated to eliminate absolute immunity in favor of a qualified privilege in tort situations against government officials. In *Medeiros v. Kondo*, 55 Haw. 499, 522 P.2d 1269 (1974),

---

> A finding that the publication is libelous per se presumes damages to the injured party and thus special damages need not be shown. This is not, however, determinative of the issue whether defendant is liable. The claim for relief remains subject to a privilege defense asserted by the publisher of the defamatory material.

*Russell v. Am. Guild of Variety Artists*, 53 Haw. 456, 459, 497 P.2d 40, 43 (1972).

for example, the Hawaii Supreme Court held that a nonjudicial government official has only a qualified privilege for acts done while exercising authority, and may be held liable where the official "is motivated by malice, and not by an otherwise proper purpose." *Id.* at 503, 522 P.2d at 1271. In so doing, it overruled prior Hawaii law "[t]o the extent that absolute immunity from tort suit for nonjudicial officers may have been the law in Hawaii[.]" *Id.* at 500-01, 522 P.2d at 1270; *see also Runnels v. Okamoto*, 56 Haw. 1, 4, 525 P.2d 1125, 1128 (1974) (explaining that "[i]n *Kondo*, we announced that the doctrine of 'absolute immunity' would no longer be permitted to shield a nonjudicial government officer for his tortious acts[,]" and applying *Kondo*'s qualified privilege standard to a defamation claim). The Hawaii Supreme Court later extended *Kondo* to acts of the Honolulu prosecuting attorney, again rejecting absolute immunity in favor of a qualified privilege. *See Orso v. City & Cnty. of Honolulu*, 56 Haw. 241, 247-48, 534 P.2d 489, 493 (1975), *overruled on other grounds by Kahale v. City & Cnty. of Honolulu*, 104 Haw. 341, 90 P.3d 233 (2004). These cases rejected absolute immunity because the Hawaii Supreme Court was "unwilling to deny plaintiffs a 'mere inquiry into malice' [given its] strong preference for allowing all litigants

their day in court." *Kondo*, 55 Haw. at 504, 522 P.2d at 1272 (quoting 2 F. Harper & F. James, *The Law of Torts* § 29.10 at 1645 (1956)).[8]

With that indication imbedded in Hawaii case law, and considering the weight of case law from other jurisdictions, the court concludes that under Hawaii law an absolute privilege does not apply to complaints made to police. The court declines to apply the minority rule suggested by Waldorf that communications in a police report are absolutely privileged.

---

[8] The court recognizes that the Restatement (Second) of Torts § 588 (1977) states:

> A witness is *absolutely privileged* to publish defamatory matter concerning another *in communications preliminary to a proposed judicial proceeding* or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

*Id.* (emphases added.) But comment e to that section gives this qualification:

> As to communications preliminary to a proposed judicial proceeding, *the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible party to the proceeding*. The bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered.

*Id.* cmt e (emphasis added). Thus, even if Hawaii would adopt § 588's "absolute privilege," it contains a type of good faith requirement for "communications preliminary to a proposed judicial proceeding." And, although Hawaii courts often rely on portions of Restatements, they do not always follow them. *See, e.g.*, *Steigman v. Outrigger Enters., Inc.*, 126 Haw. 133, 145, 267 P.3d 1238, 1250 (2011); *Kutcher v. Zimmerman*, 87 Haw. 394, 406, 957 P.2d 1076, 1088 (Haw. Ct. App. 1998).

Given this ruling, the court will apply existing Hawaii law, which holds more generally that, for claims of defamation, a speaker is protected by a qualified privilege when he or she "reasonably acts in the discharge of some public or private duty, legal, moral, or social, and where the publication concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty." *Russell*, 53 Haw. at 460, 497 P.2d at 44.

> [T]he qualified privilege is conditional and it must be exercised (1) in a reasonable manner and (2) for a proper purpose. The immunity is forfeited if the defendant steps outside the scope of or abuses the privilege. The qualified privilege may be abused by (1) excessive publication, (2) use of the occasion for an improper purpose, or (3) lack of belief or grounds for belief in the truth of what is said.

*Kainz v. Lussier*, 4 Haw. App. 400, 405, 667 P.2d 797, 802 (Haw. Ct. App. 1983) (citations omitted). And the party claiming defamation has the burden of proving that a qualified privilege was abused. *See Towse v. State*, 64 Haw. 624, 632, 647 P.2d 696, 702 (1982).

//

///

///

///

///

## IV. **CONCLUSION**

For the foregoing reasons, Defendant Waldorf's Motion for Judgment on the Pleadings as to Count Three, alleging defamation of character, is DENIED. Count Three remains in full.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 22, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, Civ. No. 20-00117 JMS-RT, Order Denying Defendant's Motion for Judgment on the Pleadings as to Count Three (Defamation), ECF No. 38