IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDY TUOMELA, | Civ. No. 20-00117 JMS-RT |
| Plaintiff, | ORDER (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS FOUR AND FIVE, ECF NO. 50; AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 52 |
| vs. | |
| WALDORF-ASTORIA GRAND WAILEA HOTEL, | |
| Defendant. | |

## ORDER (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS FOUR AND FIVE, ECF NO. 50; AND (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 52

## I. INTRODUCTION

Defendant Waldorf=Astoria Management LLC[1] moves pursuant to

Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to Counts

Four (alleging wrongful termination) and Five (alleging breach of contract) of pro

se Plaintiff Wendy Tuomela's ("Plaintiff" or "Tuomela") Complaint.  ECF No. 50.

Plaintiff responds with a Motion for Summary Judgment, affirmatively seeking

---

[1] The pro se Complaint and caption name Defendant as "Waldorf-Astoria Grand Wailea Hotel."  ECF No. 1-1 at PageID # 10.  Defendant's Answer asserts that its proper name is "Waldorf=Astoria Management LLC."  ECF No. 9 at PageID # 70.  The court refers to Defendant simply as "Waldorf" or "Defendant."

judgment on all remaining counts of the Complaint.  ECF No. 52.  Based on the

following, Defendant's Motion is GRANTED and Plaintiff's Motion is DENIED.

Counts Four and Five are DISMISSED with prejudice.  Count Three (alleging

defamation) is Plaintiff's only remaining claim.  The action, however, has been

STAYED pending resolution of criminal charges against Plaintiff in a state court

action.  *See* ECF Nos. 70, 71.

## II.  <u>BACKGROUND</u>

Tuomela's Complaint alleges that she was wrongfully terminated in

April 2018 from her 20-year term of employment at the Grand Wailea Hotel after

being falsely accused of theft.  ECF No. 1-1 at PageID ## 11, 15-18.  Based on that

termination and related events, she alleged the following five counts:  Count One

("Extortion"), Count Two ("Breach of Fiduciary Duty"), Count Three

("Defamation of Character"), Count Four ("Wrongful Termination"), and Count

Five ("Breach of Contract").  *Id.* at PageID ## 12-19.

By previous Orders, the court dismissed Counts One and Two with

prejudice.  *See* ECF No. 28, *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*,

2020 WL 3490027 (D. Haw. June 26, 2020) (Order dismissing Count One); and

ECF No. 48, *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, 2021 WL 232809

(D. Haw. Jan. 22, 2021) (Order dismissing Count Two).  The court also denied a

Motion for Judgment on the Pleadings that sought to dismiss Count Three based only on an assertion of an absolute privilege as to defamation.  *See* ECF No. 49, *Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, 2021 WL 233695 (D. Haw. Jan. 22, 2021).  Waldorf now moves for judgment on the pleadings as to Counts Four and Five, and the court thus focuses only on the allegations as to those two Counts.

## A.    Count Four

Count Four for "wrongful termination" begins with the following description of the legal basis for that claim:

> **Wrongful Termination:**  Elements of Wrongful Dismissal [a] Violates laws against discrimination (age). [b] Not aligning with written and spoken employment agreements (ILWU contract) [c] Violation of specific Labor Laws (Department of Labor and Industrial Relations Administrative Rules: Title 12, Chapter 24) [d] Results in an employee complaint adjacent to the employer.  1] (Verbal abuse and threats from a co-worker) 2] (whistel-blower (*sic*) concerning Infestation of Black Mold) 3] (Extortion of Cash and termination without following chain of command or protocol) (H.R.S. 378-62) (42 U.S.C.2000e-3(a)).

ECF No. 1-1 at PageID # 15 (brackets in original).[2]  In a lengthy factual basis, Count Four then alleges that Plaintiff's locker was illegally searched (presumably by the Defendant):

---

[2] There are absolutely no factual allegations in the Complaint, nor in any discussion in any of the motions filed in this case, regarding age discrimination or whistle-blower retaliation.

(continued . . .)

> On April 13th, 2018, Ms. Tuomela's locker was illegally
> searched and the contents were removed. Her 4th
> Amendment rights were violated. There was no probable
> cause, no warrant, and no documentation of the items
> removed from her locker. At the time of the unwarranted
> search, there was no law enforcement officer present, nor
> was Ms. Tuomela present. The removal of her personal
> items can be called breaking, entering and theft. Many of
> her personal belongings were never returned to her,
> including a mesh bag of valuable (irreplaceable) earrings
> and her personal cash bank, which contained U.S.
> currency and unused prepaid cash cards.

*Id.* Count Four then describes how Plaintiff was "put on suspension pending

investigation" after a meeting on that day where "she was sequestered in a small

back office with the door closed and detained by Ms. Kawabata and Mr.

Palazzotto[,] two people she was not acquainted with." *Id.* It continues:

> Mr. Palazzotto verbally threatened Ms. Tuomela with
> incarceration. Mr. Palazzotto's words to her: "I know
> where you live, and I will send the police to your house
> to arrest you, if you don't come clean with me right
> now!" He then proceeded to shove a Visa credit card in
> Ms. Tuomela's face and shouted "What did you do?" Ms.
> Tuomela had no idea what he was yelling about, and told
> him so. Ms. Kawabata, Human Resource representative,
> just sat there and allowed the abuse to continue. Ms.
> Kawabata had a duty to Ms. Tuomela to defend her
> against the verbal abuse she was receiving from Mr.

---

(. . . continued)
Rather, all indications by Plaintiff are that this suit is based on an alleged breach of contract or
wrongful termination (and defamation and breach of fiduciary duty as already ruled upon in prior
orders). There is no independent cause of action in the Complaint for wrongful discrimination or
retaliation.

> Palazzotto, a fellow associate crossing the lines of abuse.
> He had no right to verbally assault Ms. Tuomela. Ms.
> Tuomela asked for a union representative and a steward
> was located by phone. The union shop steward informed
> Ms. Tuomela that she had the right to remain silent and
> the union would contact her.

*Id.* The Complaint then describes, apparently still as part of Count Four's wrongful termination claim, meetings with Palazzotto, Kawabata, and a union representative, Stephen West, on April 16 and 17, 2018, where theft accusations against Plaintiff were discussed. *Id.* at PageID # 16.[3]

It alleges that, at an April 17, 2018 meeting, "Mr. Palazzotto informed Ms. Tuomela that there was a Maui Police officer outside and he was there to take her to jail." *Id.* "In fear with extreme anxiety and under duress Ms. Tuomela asked Mr. West what she should do, she was scared and she did not want to go to jail." *Id.* "Mr. West came out and told Ms. Tuomela that the only way she would

---

[3] An introductory section of the Complaint is also relevant, alleging in part that:

> At the time of [Plaintiff's] termination, the agents of the hotel did
> not follow proper Protocol nor the Chain of Command. None of
> her supervisors were involved with her termination, she was fired
> by a security guard and a human resources representative. Her
> own union representative assisted the hotel agents in her
> termination gaining the benefit of his own unjust enrichment by
> breaching his fiduciary duties.

ECF No. 1-1 at PageID # 11. Palazzotto is apparently the "security guard" and Kawabata the "human resources representative."

avoid going to jail right now, would be to pay $900.00 more in cash, to Ms.

Kawabata and Mr. Palazzotto. . . She complied with the demand and paid the cash

ransom to Ms. Kawabata." *Id.*  After that, "Ms. Kawabata informed Ms. Tuomela

that she was terminated from her 20[-]year employment at the Grand Wailea Hotel.

At that time[,] Ms. Kawabata verbally stated that the circumstances of the

termination would be kept confidential." *Id.*

**B.     Count Five**

Count Five alleges a breach of contract as follows:

> **Breach of Contract:**  Elements of a Contract: A contract
> is an agreement between two parties that creates an
> obligation to do or refrain from doing a particular thing.
> Action for Breach of Contract arises when the
> performance of any person does not live up to the terms
> of the contract and causes the other party to suffer
> economic damages or other types of visible injury.
> (LMRDA Title V Section 50l(b)) (29 U.S.C. 185 & 501).

*Id.* at PageID # 18.  A contract that was allegedly breached is apparently a verbal

agreement between Defendant and Plaintiff regarding confidentiality of the reasons

for her termination.  Count Five alleges:

> On April 17th, 2018, Ms. Carol Kawabata entered into a
> contract with Ms. Wendy Tuomela.  The Offer was made
> by Ms. Kawabata to keep the circumstances of Ms.
> Tuomela's termination confidential.  Ms. Tuomela
> agreed, accepted these terms, therefore the contract was
> formed.  Witnesses to the formation of this contract were
> Stephen West (ILWU) and Michael Palazzotto hotel

6

> security.  "Consideration" was made to refrain from
> disclosure.  Almost immediately[,] Ms. Kawabata
> breached this contract by disclosing the circumstances of
> the termination to Mr. Justin Sugarman, Humu outlet
> manager.  Mr. Sugarman, on April 19th, 2018, then told
> the staff members of the outlet that Ms. Tuomela was
> terminated for theft and misconduct. . . . [T]he false
> accusations and false information then spread like
> wildfire throughout the hotel and the community
> defaming Ms. Tuomela.  And the repercussions continue.

*Id.*

Plaintiff's breach of contract claim may also be based on a violation

of a collective bargaining agreement ("CBA").  It is undisputed that Plaintiff's

employment at the Grand Wailea was covered by a CBA.[4]  In addition to Count

Five's reference to "(LMRDA Title V Section 50l(b)) (29 U.S.C. 185 & 501)," *id.*

at PageID # 18, the Complaint makes several references to union representation,

ECF No. 1-1 at PageID # 11, 13, 15-17.  It also includes a statement attached to the

Complaint that states:

> Ms. Tuomela is a vested member of the I.L.W.U. Union
> Local 142.  It is the absolute responsibility of this Union
> to represent and legally uphold the rights of its members.
> Ms. Tuomela is a member and has been a dues paying

---

[4] The court takes judicial notice of the CBA between Defendant and Local 142 of the
International Longshore and Warehouse Union ("ILWU"), applicable for the period from April
1, 2018 to March 31, 2023.  *See* ECF No.50-3; *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131,
1142 (N.D. Cal. 2019) ("In particular, 'courts routinely take judicial notice of the governing
[CBA] when necessary to resolve issues of preemption.'") (quoting *Johnson v. Sky Chefs, Inc.*,
2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012)).

> member for 20 years, her union should be held
> accountable for her damages.

*Id.* at PageID # 58.  Elsewhere, the Complaint also refers to "[n]ot aligning with written and spoken employment agreements (ILWU contract)."  *Id.* at PageID # 15. And Plaintiff's Opposition to Defendant's Motion clearly indicates that she believes her claim is based on an alleged failure of Defendant to follow the "protocol for terminating an employee with union seniority."  ECF No. 58 at PageID # 535; *see id.* ("There was never an investigation conducted.  Many of Ms. Tuomela's Union contract rights were ignored."); *id.* at PageID # 536 ("A contract 'EXISTS' between Ms. Tuomela's union and the Grand Wailea Hotel."); *id.* at PageID # 543 (earnings statement with deductions for union dues).

## C.    Procedural History

Defendant filed its Motion for Judgment on the Pleadings as to Counts Four and Five on February 1, 2021.  ECF No. 50.  On February 8, 2021, Plaintiff filed her Motion for Summary Judgment.  ECF No. 52.  On March 5, 2021, Defendant filed an Opposition to Plaintiff's Motion for Summary Judgment, ECF No. 54, and Plaintiff filed a Response on March 22, 2021, ECF No. 57.  On March 23, 2021, Plaintiff filed her Opposition to Defendant's Motion for Judgment on the Pleadings, ECF No. 58, and Defendant filed a Statement of No Further Position on

March 25, 2021, ECF No. 59.  The court decides the Motions without an oral

hearing under Local Rule 7.1(c).  ECF Nos. 60, 61.[5]

### III.  STANDARDS OF REVIEW

#### A.    Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c) permits judgment on the

pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."

Because the issue presented by a Rule 12(c) motion is substantially the same as

that posed by a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)

—whether the factual allegations of the complaint, together with all reasonable

inferences, state a plausible claim for relief—the same standard applies to both.

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)

(citing *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (holding

that Rule 12(c) and Rule 12(b)(6) motions differ in time of filing but are otherwise

"functionally identical," and applying the same standard of review)).

In turn, Rule 12(b)(6) permits a motion to dismiss for "failure to state

a claim upon which relief can be granted."  A Rule 12(b)(6) dismissal is proper

---

[5] On April 15, 2021, the court was notified that Plaintiff was recently charged by felony information in the Circuit Court of the Second Circuit, State of Hawaii, apparently based on the same facts and circumstances at issue in this case.  ECF Nos. 68, 70.  Given these criminal charges, on April 28, 2021, the action was stayed and administratively closed.  ECF No. 71.  The administrative closure, however, was subject to the court's ruling on the pending Motions.  A complete resolution of these motions would include any motions for reconsideration.

when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The "mere possibility of misconduct," or an "unadorned, the-defendant-unlawfully-harmed-me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79 (citations omitted).

**B.     Summary Judgment**

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.

R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the nonmoving party.  *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'"  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.,* 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South,* 965 F.2d 1532, 1536 (9th Cir. 1992)).  And so, a Plaintiff moving for summary judgment on an affirmative claim "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in his [or her] favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Put another way, a plaintiff's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 488 (1984)).

///

///

## IV. <u>ANALYSIS</u>

### A.    Defendant's Motion

Defendant argues that at least some of the allegations in Counts Four and Five are preempted under *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 245 (1959) ("When an activity is arguably subject to § 7 or § 8 of the [National Labor Relations Act ('NLRA')], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board.").[6] Alternatively, it argues that Plaintiff's claims—to the extent they are alleging that Defendant's wrongful termination breached the collective bargaining agreement—are also preempted by Section 301 of the NLRA, 29 U.S.C. § 185(a).  The court agrees as to both points.

---

[6] Section 7 of the NLRA protects a right of collective bargaining, providing that

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157.  And Section 8 of the NLRA, among other matters, defines "unfair labor practices" by employers and labor organizations.  *See* 29 U.S.C. § 158.

### 1.  *Garmon Preemption*

"*Garmon* pre-emption . . . 'is intended to preclude state interference with the National Labor Relations Board's interpretation and active enforcement of the integrated scheme of regulation established by the NLRA.'" *Chamber of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (quoting *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 613 (1986) (some internal quotation marks omitted)).  "To this end, *Garmon* pre-emption forbids States to 'regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits.'" *Id.* (quoting *Wisc. Dep't of Indus. v. Gould Inc.*, 475 U.S. 282, 286 (1986)).

"Preemption under *Garmon* does not require that a plaintiff have a certain remedy before the NLRB, or even that the NLRB will hear the claim in the first place." *Smith v. Nat'l Steel & Shipbuilding Co.*, 125 F.3d 751, 754 (9th Cir. 1997) (citing *Bassette v. Stone Container Corp.*, 25 F.3d 757, 759-60 (9th Cir. 1994)).  "Instead, once a court determines that a plaintiff's claim alleges conduct that is 'arguably' or 'potentially' subject to § 7 or § 8 of the NLRA, the court is required to defer to the exclusive competence of the NLRB." *Id.* (quoting *Bassette*, 25 F.3d at 760) (other citation omitted).  "Conduct, however, that is arguably prohibited or protected by the NLRA will not be preempted under *Garmon* if the alleged conduct is only of peripheral concern to the Act or

implicates interests that are 'deeply rooted in local feeling and responsibility.'"

*Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1413 (9th Cir. 1991) (quoting

*Garmon*, 359 U.S at 243-44).

Here, Count Four's wrongful termination claim is based in large part

on Defendant's alleged verbal threats to and alleged mistreatment of Plaintiff when

confronting her with theft allegations on April 13 and 17, 2021—facts which

indicate unfair labor practices under the purview of the NLRB.  For example, the

claim could be construed as alleging that Plaintiff was disciplined or terminated

after exercising a right to union representation.  *See* ECF No. 1-1 at PageID # 15

("Ms. Tuomela asked for a union representative and a steward was located by

phone. . . . Ms. Tuomela was put on suspension pending investigation, and escorted

off of the hotel property[.]").  Similarly, Plaintiff alleges in Counts Four and Five

that Defendant failed to uphold terms of a "contract" to keep the circumstances of

her termination confidential.  ECF No. 1-1 at PageID ## 16, 18.  But such an

agreement (or "direct dealing") would be a prohibited unfair labor practice, with

such a claim preempted by *Garmon*.  *See Sun Carriers*, 90 F.2d at 1417 ("An

employer who bargains directly with individual employees violates [29 U.S.C.

§ 158(a)(5)'s] requirement that an employer bargain collectively with the

designated representative of its employees."); *Frederick v. Federal-Mogul Inc.*,

2008 WL 5220693, at *7 (E.D. Mich. Dec. 12, 2008) ("An employer . . . commits

an unfair labor practice under [§ 158(a)(5)] if it 'disregards the bargaining

representative by negotiating with individual employees . . . with respect to wage,

hours and working conditions.'") (quoting *Medo Photo Supply Corp. v. N.L.R.B.*,

321 U.S. 678, 684 (1944) (brackets omitted)); *id.* at *8 ("The NLRA similarly

prohibits union employees from bypassing their own unions and attempting to

negotiate directly with their employers to obtain additional benefits not provided in

their CBAs.") (citation omitted).

      In short, to the extent Plaintiff's claims are arguably based on unfair

labor practices, they fall within the NLRB's jurisdiction and are barred by

*Garmon.*

### 2. Section 301 Preemption

      Moreover, even if the claims are not preempted by *Garmon,* they are

preempted by § 301 of the NLRA, 29 U.S.C. § 185(a).  Plaintiff emphasizes that

her claims are based on Defendant terminating her without following the terms of

the CBA.  ECF No. 58 at PageID # 535 ("There was never an investigation

conducted.  Many of Ms. Tuomela's Union contract rights were ignored.  The

protocol for terminating an employee with union seniority was not followed.").

Count Four is based in part on her dismissal "[n]ot aligning with written and

spoken employment agreements (ILWU contract)."  ECF No. 1-1 at PageID # 15.

Count Five complains of a violation of due process, and Plaintiff argues that "Ms.

Tuomela has a valid union contract in place, her rights under that contract were

violated," ECF No. 52 at PageID # 467, and that when she was terminated, "[t]he

employer did not play by the rules[—]Their rules or the union rules," ECF No. 58

at PageID # 538.

But the law is clear that an employee's claim for breach of a CBA is

preempted by § 301.  *See Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997

(9th Cir. 1987) ("A suit for breach of a [CBA] is governed exclusively by federal

law under section 301.") (citing *Franchise Tax Bd. v. Constr. Laborers Vacation

Tr.*, 463 U.S. 1, 23 (1983)).  "The preemptive force of section 301 is so powerful

as to displace entirely any state claim based on a [CBA], and any state claim whose

outcome depends on analysis of the terms of the agreement."  *Id.* (citations

omitted).  And this preemption covers the wrongful termination and breach of

contract claims at issue here.  *See Bosworth v. Foss Maritime*, 2016 WL 4472987,

at *6 (D. Haw. July 29, 2016) ("When employment is governed by the terms of a

[CBA] between the employer and a union, claims such as wrongful termination

and breach of contract are preempted by section 301 of the LMRA.") (citing

*Mayjor v. Harrah's Las Vegas, Inc.*, 136 F. Appx 15, 16-17 (9th Cir. 2005) (mem.)

(Findings and Recommendation adopted by *Boswoth v. Foss Maritime*, 2016 WL

6433832 (D. Haw. Oct. 13, 2016)); *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d

1044, 1048 (9th Cir. 1987) (reasoning that a wrongful discharge claim was

preempted where plaintiff "apparently contends that she was wrongfully

discharged in violation of the oral agreement in connection with her reinstatement,

and that this agreement is not part of the [CBA]" because "'any independent

agreement of employment could be effective only as part of the [CBA]'") (quoting

*Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1474 (9th Cir. 1984)

(other citations omitted)).

   Because the claims are preempted, they could be amended to assert a

federal cause of action under § 301.  But such claims under the CBA would have to

be "hybrid" claims alleging both a breach of contract claim by the employer *and* a

breach of a duty of fair representation by the union.  *See DelCostello v. Int'l Bhd.*

*of Teamsters*, 462 U.S. 151, 164-65 (1983); *Bliesner v. Commc'n Workers of Am.*,

464 F.3d 910, 913 (9th Cir. 2006) ("An aggrieved party may bring a hybrid fair

representation/§ 301 suit against the union, the employer, or both.  In order to

prevail in any such suit, the plaintiff must show that the union and the employer

have both breached their respective duties.").  "A hybrid § 301/fair representation

action 'comprises two causes of action' that sink or swim together."  *Kirchhof v.*

*Haw. Ass'n of Union Agents*, 187 F. Supp. 3d 1181, 1197 (D. Haw. 2016) (quoting

*Bliesner*, 464 F.3d at 913).

Leave to amend to add a § 301 claim would be futile because "[a]

hybrid § 301/fair representation claim is subject to a six-month statute of

limitations after the cause of action accrues." *Id.* (citing *DelCostello*, 462 U.S. at

174). The limitations period accrues when "the employee knows or has reason to

know that the union has quit pursuing [her] grievance short of arbitration." *Carter*

*v. Smith Food King*, 765 F.2d 916, 919 n.2 (9th Cir. 1985) (citing *McNaughton v.*

*Dillingham Corp.*, 707 F.2d 1042, 1047 (9th Cir. 1983)); *see also Grant v.*

*McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998) ("The limitations

period begins to run when a Plaintiff receives a letter from the Union notifying her

that it will pursue her claim no further."); *Galindo v. Stoody Co.*, 793 F.2d 1502,

1509 (9th Cir. 1986) (stating that the statute of limitations "begins to run when an

employee knows or should know of the alleged breach of duty of fair

representation").

Here—even if a § 301 hybrid claim could relate back to the initial

filing of this Complaint on February 27, 2020, *see* ECF No. 1-1 at PageID # 10—

such a claim would clearly be time-barred. The Complaint alleges that "Mr.

Stephen West of the ILWU . . . completely failed in his duty to represent

[Plaintiff]," on April 17, 2018.  ECF No. 1-1 at PageID # 13; *see also id.* at PageID # 57 (Exhibit T stating that "[o]n April 16th, 2018, Stephen West I.L.W.U. Business Agent failed in his duty to defend [Plaintiff].").  April 2018 was nearly two years before the Complaint was first filed in state court on February 27, 2020.  That is, a § 301 claim would be nearly 18 months late.  Leave to amend would be futile.[7]  *See, e.g.*, *Parents for Privacy v. Barr*, 949 F.3d 1210, 1221 (9th Cir. 2020) ("A district court acts within its discretion to deny leave to amend when amendment would be futile.") (quotation marks and citation omitted).

        For the foregoing reasons, Counts Four and Five are DISMISSED with prejudice.

**B.     Plaintiff's Motion**

        Because the court grants Defendant's Motion for failure to state a claim, Plaintiff's Motion for Summary Judgment as to Counts Four and Five necessarily fails.  In any event, because she has the burden of proof on her affirmative claims, she has not met the standard necessary to obtain relief as a matter of law at this stage.  That is, she has not "come forward with evidence

---

        [7] Alternatively, if the current claims were "recharacterized" as § 301 claims, they would clearly be time barred for the same reasons.  *See Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980) (stating that "[m]ere omission of reference to LMRA § 301 in the complaint does not preclude federal subject matter jurisdiction" and recharacterizing a plaintiff's complaint as one arising under § 301).

which would entitle [her] to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co.,* 213 F.3d at 480.  She has not established "beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in [her] favor." *Fontenot*, 780 F.2d at 1194.

Likewise, for the remaining claim for defamation (Count Three), the court has already held that Defendant is protected by a qualified privilege when making reports to police.  ECF No. 49 at PageID # 399; *Tuomela*, 2021 WL 233695, at *5.  And because Plaintiff has the burden of proving that a qualified privilege was abused, *id.*, Plaintiff has necessarily failed to meet her burden to prevail at summary judgment stage.  *See C.A.R. Transp. Brokerage Co.,* 213 F.3d at 480.  Plaintiff's Motion for Summary Judgment is DENIED.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion for Judgment on the Pleadings as to Counts Four and Five is GRANTED.  Counts Four and Five are DISMISSED with prejudice.  Although Count Three (alleging defamation) remains pending, the action has been STAYED pending resolution of criminal charges

///

///

///

against Plaintiff in a state court action.  *See* ECF Nos. 70-71.

IT IS SO ORDERED:

DATED:  Honolulu, Hawaii, May 12, 2021.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, Civ. No. 20-00117 JMS-RT, Order Granting
Defendants' Motion for Judgment on the Pleadings as to Counts Four and Five, ECF No. 50; and
(2) Denying Plaintiff's Motion for Summary Judgment, ECF No. 52