IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| WENDY TUOMELA,<br><br>                    Plaintiff,<br><br>    vs.<br><br>WALDORF-ASTORIA GRAND WAILEA HOTEL,<br><br>                    Defendant. | CIV. NO. 20-00117 JMS-RT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT III (DEFAMATION), ECF NO. 108 |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT III (DEFAMATION), ECF NO. 108

## I.  INTRODUCTION

Defendant Waldorf=Astoria Management LLC[1] moves for summary judgment against pro se Plaintiff Wendy Tuomela's defamation claim, Count III of the Complaint.  ECF No. 108.  That claim is the only claim remaining in this case, the court having previously dismissed Counts I and II, *see* ECF Nos. 28 and 48,

---

[1] The pro se Complaint and caption name Defendant as "Waldorf-Astoria Grand Wailea Hotel."  ECF No. 1-1 (PageID.10).  Defendant's Answer asserts that its proper name is "Waldorf=Astoria Management LLC."  ECF No. 9 (PageID.70).  The court refers to Defendant simply as "Waldorf" or "Defendant."

and granted judgment on the pleadings in favor of Defendant as to Counts IV and

V, *see* ECF No. 73.  For the reasons provided below, the Motion is GRANTED.[2]

## II.  <u>BACKGROUND</u>[3]

Plaintiff was employed by Waldorf on Maui from September 1998

until April 2018.  She held various positions during that term of employment,

including full server at the hotel's restaurant beginning in 2002 and lasting until

her termination.  As a full server, Plaintiff handled payments tendered by dining

customers and completed transactions on the restaurant's point-of-sale terminal.

Around April 2018, Defendant's management team—including then-

Director of Security Michael Palazzotto—began to suspect that Plaintiff had been

mishandling customers' cash payments, possibly with malicious intent towards the

restaurant.  On April 12, 2018, Mr. Palazzotto conducted a "sting operation" in

which he directed two associates to dine undercover at the restaurant.  He arranged

for those associates to be seated at a table served by Plaintiff and provided those

associates with two $100.00 bills to pay for the meals they were to order through

Plaintiff.  The associates ordered meals from Plaintiff and paid her the two $100.00

---

[2] Having reviewed Defendant's Memorandum in Support of its Motion for Summary Judgment, ECF No. 108-1, Plaintiff's Opposition, ECF No. 111, and Defendant's Reply, ECF No. 115, the court decides Defendant's Motion without a hearing pursuant to Local Rule 7.1(c).

[3] The following facts are not disputed by the parties for the purposes of this Motion, unless otherwise specified.  *Compare* ECF No. 1-1, *with* ECF No. 108-1, *and* ECF No. 109.

bills.  It is Defendant's contention that, at the end of the sting operation, Mr. Palazzotto audited Plaintiff's transactions for the day but did not find any cash in Plaintiff's "till."[4]  Mr. Palazzotto did, however, uncover multiple attempts by Plaintiff to charge an American Express Gift Card held under her name (the "Amex Gift Card"), charges that were declined due to insufficient funds, according to Defendant.  Based on the audit, Mr. Palazzotto surmised that Plaintiff had pocketed the $200 and had feigned charges on the Amex Card knowing it had insufficient funds.

The next day, April 13, 2018, Defendant's security team searched Plaintiff's work locker without her consent, purportedly discovering a mound of retained customer receipts and a Visa Debit Card under the name "Maginot" (a customer not involved in the sting operation).  Following the search, Plaintiff was called into a meeting with Mr. Palazzotto and Defendant's then-Director of Human Resources Carol Kawabata.  Ms. Kawabata suspended Plaintiff after Mr. Palazzotto questioned Plaintiff regarding the Maginot Debit Card and the suspicious transactions on the point-of-sale terminal.  Plaintiff was summoned for a second meeting on April 16, 2018, during which Mr. Palazzotto formally accused

---

[4] A "till" is a "drawer, money-box, or similar receptacle under and behind the counter of a shop or bank, in which cash for daily transactions is temporarily kept."  The Oxford English Dictionary (3rd ed. 2022), *available at* https://www.oed.com/view/Entry/201991?isAdvanced= false&result=1&rskey=VXhFaF& (last visited October 25, 2022).

Plaintiff of identity theft and credit card fraud.  A third meeting occurred on April 17, 2018, during which Mr. Palazzotto demanded Plaintiff to pay back the $200 involved in the sting operation and an additional $907 relating to prior transactions that Mr. Palazzotto believed to be fraudulently mishandled.[5]  Plaintiff paid both amounts and agreed to resign (effectively, a termination).

Also on April 17, 2018, Ms. Kawabata informed Plaintiff's supervisor, Justin Sugarman, about Plaintiff's purported misconduct.  And on April 19, 2018, Mr. Sugarman told most, if not all, of the staff at the restaurant about Plaintiff's misconduct and resignation.  That sequence of statements is one ground on which Plaintiff asserts her defamation claim.  *See* ECF No. 49 (PageID.389–90) (prior Order Denying Defendant's Motion for Judgment on the Pleadings as to Count Three (Defamation)) (citing ECF No. 1-1).  The second ground is Mr. Palazzotto's April 16, 2018 statement to the Maui Police Department regarding Plaintiff's purported misconduct.  *See id.* (PageID.390); *see also* ECF No. 109-9 (PageID.871–72) (Case Summary Report from the Maui Police Department summarizing "04/16/18" interview with Mr. Palazzotto, during which "Mr. Palazzotto stated the [Waldorf] desire[d] prosecution in [the] matter").

---

[5] Plaintiff alleges that the payment demands were backed by threats of her being arrested by a "Maui Police Officer and squad car posted outside the [hotel] with handcuffs."  ECF No. 1-1 (PageID.16).  That allegation was relevant only to Plaintiff's extortion and wrongful termination claims, which the court previously dismissed in ECF Nos. 28 and 73, respectively.

As for injuries, Plaintiff claims that she has been denied service-industry positions with employers comparable to Defendant due to the allegedly defamatory statements, which "essentially blackballed [her] from any employment in Wailea[, Maui]."  ECF No. 1-1 (PageID.14).  She allegedly uncovered a "false police report . . . when she was applying for a job which required a background check," and "[d]ue to the defamatory nature of the police report[,] she did not get the position she was seeking."  *Id.*  More personally, she alleges that her "many friends, family members, return hotel guests, and clients, and other members of the community" "were told that she was fired for theft and misconduct" when they visited Defendant's restaurant.  *Id.*

## III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *accord Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323). "If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), and citing Fed. R. Civ. P. 56(e)). The non-moving party cannot simply "rest upon the mere allegations or denials of [its] pleading." *Anderson*, 477 U.S. at 248 (citation omitted). Nor can it defeat summary judgment by relying solely on conclusory allegations unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Unanswered requests for admission, or untimely and deficient responses to the same, are deemed admitted under Federal Rule of Civil Procedure

36(a)(3) and may be relied on as a basis for granting summary judgment.  *See*

*Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

## IV.  DISCUSSION

Defendant is entitled to summary judgment against Plaintiff's

defamation claim because the evidence is insufficient to establish genuine issues of

material fact as to whether Defendant's statements were false—they were not—

and as to whether Defendant is shielded by a qualified privilege—it is.

Under Hawaii law, a plaintiff must satisfy four elements to sustain a

claim for defamation:

> (a) a false and defamatory statement concerning another;
>
> (b) an unprivileged publication to a third party;
>
> (c) fault amounting at least to negligence on the part of
> the publisher [actual malice where the plaintiff is a public
> figure]; and
>
> (d) either actionability of the statement irrespective of
> special harm or the existence of special harm caused by
> the publication.

*Gold v. Harrison*, 88 Haw. 94, 100, 962 P.2d 353, 359 (1998) (brackets in original)

(quoting *Dunlea v. Dappen*, 83 Haw. 28, 36, 924 P.2d 196, 204 (1996)).  As the

first element suggests, "[t]ruth is an absolute defense to defamation."  *Lucas v.*

*Citizens Commc'ns Co.*, 409 F. Supp. 2d 1206, 1224 (D. Haw. 2005) (quoting

*Gonsalves v. Nissan Motor Corp. in Haw.*, 100 Haw. 149, 173, 58 P.3d 1196, 1220

(2002)), *aff'd*, 244 F. App'x 774 (9th Cir. 2007).  Another defense against defamation is the qualified privilege granted to a defendant for a statement made when "reasonably act[ing] in the discharge of some public or private duty, legal, moral, or social, and where the publication [of the statement] concerns subject matter in which the author has an interest and the recipients of the publication a corresponding interest or duty." *Russell v. Am. Guild of Variety Artists*, 53 Haw. 456, 460, 497 P.2d 40, 44 (1972).

For the second element—publication—there is evidence demonstrating that the allegedly defamatory statements were made, i.e., "published," to third parties.  Specifically, Defendant's own evidence establishes that Mr. Palazzotto informed the Maui Police Department of Plaintiff's misconduct and resignation.  *See, e.g.*, ECF No. 109-9 (PageID.871–72).  And there is at least some evidence demonstrating that Ms. Kawabata informed (via Mr. Sugarman) the restaurant staff of Plaintiff's misconduct and resignation.  *See, e.g.*, ECF No. 1-1 (PageID.22) (letter attached to the Complaint, written by Plaintiff's former coworker, stating that "Justin Sugarman told us that [Plaintiff] had been fired for stealing").  The court construes that evidence in the light most favorable to Plaintiff and concludes that Defendant made statements to the Maui Police Department and to Plaintiff's former coworkers that contained the maximum amount of information harmful to Plaintiff—she had been terminated because she

stole money during the sting operation, because she stole money on other occasions, and because she had pocketed a customer's debit card.

But even construing those facts in Plaintiff's favor, Defendant prevails because there is no genuine issue of material fact on the first element of Plaintiff's defamation claim—Defendant's statements were truthful, given the evidence presented at summary judgment. To prove that Plaintiff stole money, Defendant provides the following evidence: First, Defendant provides the Maui Police Department's report for its investigation into Plaintiff's misconduct at the restaurant, ECF No. 109-9, an investigation aided by a forensic accountant and the United States Secret Service, *see id.* (PageID.877–79). The detective leading the investigation concluded on September 17, 2020, that Plaintiff had directed "[f]ourteen (14) . . . fraudulent credit card transactions [that] were 'settled' (approved), causing a monetary loss of $1207.75 to [Defendant]." *Id.* (PageID.880). On that same day, the investigation was officially "[f]orward[ed] to [the] Prosecuting Attorney's Office for review and final disposition." *Id.* (PageID.881).

Second, Defendant provides records from the criminal case filed against Plaintiff on March 5, 2021, charging two counts of Theft in the Second Degree and one count of Fraudulent Use of a Credit Card. ECF Nos. 109-10 through 109-12; *see also* Dkt No. 1 in *State v. Tuomela*, No. 2CPC-21-0000197

(Haw. 2d Cir. Ct. Mar. 5, 2018) (charging counts under Hawaii Revised Statutes §§ 708-831(1)(b) and 708-8100(1)(a)).  One such record is a March 5, 2021 order issued by Judge Michelle Drewyer of the Circuit Court of the Second Circuit for the State of Hawaii.  ECF No. 109-11.  In that order, Judge Drewyer finds sufficient evidence to support probable cause for the charges against, and the arrest of, Plaintiff.  *See id.*

Third, Defendant provides the transcript of Plaintiff's deposition for this case.  ECF No. 109-4.  In that deposition, Plaintiff admitted that "it was reasonable for [Defendant] to think that maybe [she] was stealing from the hotel" given the evidence in the criminal case.  *Id.* (PageID.845).

And fourth, Defendant provides a declaration from its counsel that Plaintiff was served with—and failed to respond to—requests for admissions under Federal Rule of Civil Procedure 36(a).  ECF No. 89; ECF No. 109 (Defendant's Concise Statement of Facts in Support of its Motion) (citing and relying on ECF No. 89).  Pursuant to Rule 36(a)(3), Plaintiff has thus admitted the following facts for purposes of this case:  She committed the crimes charged on March 5, 2021, ECF No. 89 (PageID.688); the charges pertain to the accusations of theft that Plaintiff refers to in her civil Complaint, *id.*; and the allegedly defamatory statements made by Defendant were in fact truthful, *id.* (PageID.690).  *See Conlon*,

474 F.3d at 621.  Plaintiff does not address those admissions in her Opposition. *See* ECF No. 111.

Plaintiff's Opposition also does not include a concise statement of facts, as required by Local Rule 56.1(e), nor does it include an affidavit or declaration verifying the truth of the factual matters asserted in the Opposition's memorandum, as required by Federal Rules of Civil Procedure 56(c)(1) and 56(c)(4).[6]  The latter deficiency is more problematic for Plaintiff—it is a sufficient ground to grant summary judgment against her defamation claim.  *See Robbins v. City of San Diego Police Dep't*, 2010 WL 902970, at *4 (S.D. Cal. Mar. 8, 2010); *see also* ECF No. 110 ("Notice to Pro Se Litigants" warning Plaintiff that in order to survive summary judgment, she "must set forth specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in [Defendant's] declarations and documents").

But even if the court looks past Plaintiff's Rule 56 deficiencies and treats her Opposition memorandum as a declaration, Plaintiff's defamation claim still does not survive summary judgment because Plaintiff fails to raise a genuine

---

[6] Plaintiff's Opposition does contain a "Declaration in Support of Opposition to Motion for Summary Judgment," but that Declaration does not swear to the truthfulness of the factual assertions in the Plaintiff's memorandum.  *See* ECF No. 111 (PageID.939).  Instead, it swears only that Plaintiff is competent to be a witness in this case and that she has personal knowledge of the factual assertions in the memorandum.  *See id.*

issue of material fact in rebuttal to Defendant's factual showing.  Plaintiff generally denies that she stole from Defendant.  *See* ECF No. 111 (PageID.942); *see also* ECF No. 109-4 (PageID.845) (Plaintiff insisting, "I didn't do it," after admitting to the reasonableness of Defendant's suspicions).  Beyond that conclusory denial—which is insufficient to survive summary judgment, *see Taylor*, 880 F.2d at 1045—Plaintiff merely makes erroneous assertions based on misinterpreted evidence.  For example, she cites a portion of the police report when asserting that the criminal investigation returned "ZERO (NO) results."  ECF No. 111 (PageID.942) (citing ECF No. 111-3).  But that cited portion was simply a "Criminal History Check[]" that found "no [prior] criminal history"—a routine check performed as part of an investigation into recent misconduct, which ultimately concluded that Plaintiff had committed Theft in the Second Degree and Fraudulent Use of a Credit Card from December 2017 through May 2018, *see* ECF No. 109-9 (PageID.880).  *Compare id.* (PageID.875), *with* ECF No. 111-3.

Plaintiff also points to an update of the police report when asserting there was only a $3.00 total discrepancy in her transactions.  ECF No. 111 (PageID.943) (citing ECF No. 111-4).  But that update concerned the discrepancy affecting (i.e., constituting theft against) American Express, not Defendant; the

discrepancy affecting Defendant remained at $1207.75 after the update.  *See* ECF

No. 109-9 (PageID.880–81).[7]

Plaintiff also cites Judge Drewyer's order dismissing the criminal

charges against Plaintiff, when asserting that the dismissal was the result of newly

discovered exculpatory evidence.  *See* ECF No. 111 (PageID.943) (citing ECF No.

111-5).  Although the order itself does not elaborate on the reasons for dismissal

beyond it being in the "interests of justice," ECF No. 111-5 (PageID.954),

evidence outside the dismissal order undercuts Plaintiff's version of events.

Specifically, there is evidence demonstrating that the criminal charges were

dismissed on speedy-trial grounds because the COVID-19 pandemic created

difficulties in procuring evidence and witnesses.  *See, e.g.*, ECF No. 109-4

(PageID.855–58) (Plaintiff inquiring in her deposition as to what happened during

the dismissal, and counsel for Defendant replying with an explanation of speedy-

trial rights, to which Plaintiff responded, "Uh-huh"); ECF No. 109-9 (PageID. 879)

(police investigator noting that "[d]ue to the Covid-19 pandemic, [he] had not

received any callbacks from [Defendant's Security Director] or any of the Security

---

[7] A theory presented by Plaintiff throughout her criminal case was that she was unaware that her Amex Gift Card had insufficient funds.  That theory is contradicted by Defendant's evidence demonstrating that "a total of four (4) Balance Inquiries [were] made to [the Amex Gift Card] on various dates, at the [point-of-sale] terminal there, all of which showed the person conducting the inquiries the current balance of the [Amex Gift Card]."  ECF No. 109-9 (PageID.879).  In any event, such a dispute of "fact" is not material for present purposes.

personnel currently employed with [Defendant] and later found out they had all been furloughed").

To prove that Plaintiff pocketed the Maginot Debit Card, Defendant provides, as a part of the same police report mentioned above, an "Incident File Full Report" documenting how Ms. Kawabata and two of Defendant's security officers searched Plaintiff's locker on April 13, 2018, and found the Maginot Debit Card. *See* ECF No. 109-9 (PageID.884). Defendant also provides a copy of Ms. Kawabata's notes from the April 16, 2018 meeting between Plaintiff, Ms. Kawabata, and Mr. Palazzotto, describing how Plaintiff effectively admitted to possessing the Maginot Debit Card.[8] *See* ECF No. 109-6 (documenting Plaintiff's response to Mr. Palazzotto's accusation that the Maginot Debit Card was found in her locker: "I threw away the card after I left here"). Plaintiff does not address the Maginot Debit Card in her Opposition.

In sum, Defendant's evidence on the "false and defamatory" element is more than sufficient to satisfy its initial burden at summary judgment. Plaintiff's conclusory denials and demonstrably erroneous assertions fail to rebut Defendant's showing. Because the evidence establishes that the allegedly defamatory statements were in fact truthful, there is no genuine dispute of material fact on the

---

[8] The April 16, 2018 meeting was also attended by Mr. Stephen West, Plaintiff's union representative. *See* ECF No. 109-6. Although Mr. West is mentioned in the Complaint, his involvement with Plaintiff is not relevant to the defamation claim.

first element of Plaintiff's defamation claim, entitling Defendant to summary judgment against that claim.

Nonetheless, even assuming that there is triable issue of fact as to whether Defendant's statements were false, Defendant would still prevail on the basis of qualified privilege.  Defendant presents evidence demonstrating that Mr. Palazzotto made his statement to the police while discharging his duty as then-Director of Security to report potential crimes to law enforcement.  His statement concerned a subject in which he clearly had a professional interest—potential thefts against his employer and its customers—and his statement was received by the Maui Police Department, which had a corresponding professional duty to investigate potential thefts against the citizens of Maui.  Defendant also presents evidence that Ms. Kawabata made her statement (through Mr. Sugarman) to the restaurant staff while discharging her duty as the ultimate manager of Defendant's workplace culture—she needed to inform the staff of why a full server would not be returning to work.  Her statement concerned a subject in which she had professional interest—maintaining operational stability within the workplace by clarifying the record—and her statement was received by the restaurant staff, who had a corresponding professional interest in knowing why a coworker was let go. *See, e.g.*, *Kainz v. Lussier*, 4 Haw. App. 400, 405−06, 667 P.2d 797, 802 (1983) (discussing qualified privilege under Hawaii law).

Plaintiff does not address qualified privilege in her Opposition. *See* ECF No. 111; *see also Towse v. State*, 64 Haw. 624, 632, 647 P.2d 696, 702 (1982) (holding that the party claiming defamation has the burden of proving that a qualified privilege was abused).  Defendant is thus entitled to summary judgment on that ground, too, given the absence of a genuine issue of material fact.

## V.  <u>CONCLUSION</u>

Defendant's Motion for Summary Judgment as to Count III (Defamation of Character), ECF No. 108, is GRANTED.  There are no claims remaining in this case.  Judgment shall enter in favor of Defendant, and the Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 25, 2022.



 /s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Tuomela v. Waldorf-Astoria Grand Wailea Hotel*, Civ. No. 20-00434 JMS-KJM, Order Granting Defendant's Motion for Summary Judgment as to Count III (Defamation), ECF No. 108